IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LACEY KURT PAIGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-03415-CV-S-BP |
| | ) | |
| STEVE HOWELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANT MICHAEL BOWERSOX'S
MOTION FOR SUMMARY JUDGMENT**

Acting pro se, Plaintiff filed this suit against numerous defendants, asserting several civil rights claims. Some of the claims were dismissed (Doc. 27), and summary judgment was granted on others. (Doc. 120.) These orders did not address Plaintiff's First Amendment/retaliation claim against Defendant Michael Bowersox because Bowersox previously had not sought dismissal or summary judgment.

Bowersox then sought and obtained leave to file a motion for summary judgment out of time. (Doc. 126.) His motion is now fully briefed. The Court has considered the parties' arguments, and Bowersox's motion,(Doc. 127) is **DENIED**.

**I. BACKGROUND[1]**

Understanding Plaintiff's claim against Bowersox requires a brief discussion of the rest of Plaintiff's claims. At the times relevant to his claims Plaintiff was incarcerated in the South Central Correctional Center, ("SCCC"); he is now incarcerated out of state. Bowersox was the Warden at SCCC. From 2013 until January 4, 2017 (at which time his employment was terminated

---

[1] Given the procedural posture, where disputed, these facts (and all reasonable inferences) are stated in the light most favorable to Plaintiff.

by Bowersox), Plaintiff worked with Missouri Vocational Enterprise (MVE), a non-profit organization related to the Missouri Department of Corrections. He was assigned to the upholstery department; his duties consisted of repairing and building various kinds of furniture, and he was paid for this work. In the course of his job, Plaintiff was required to use various chemicals. These chemicals contained warnings and required the use of protective devices. Plaintiff believed that he was not provided with the proper protective devices. (*See* Doc. 120, pp. 1-2.)[2] He made several informal complaints but was not satisfied with the responses. In December 2016, he filed a formal grievance asserting that his Eighth Amendment rights were violated because the denial of necessary safety equipment constituted "deliberate indifference to health and safety." (Doc. 22-1, pp. 6-9.)[3] The grievance reflects that it was signed by "Investigating Staff" on December 29, 2016, by the "Respondent" on January 3, 2017, and by the "Reviewer" on January 4, 2017. (Doc. 22-1, p. 6.) Other than a space for the "Offender," no more signatures are called for. In addition to this grievance, Defendant wrote a separate letter directly to Bowersox in which he expressed his safety concerns and referred to his grievance. The letter is stamped "RECEIVED Dec 29 2016 SCCC WARDEN," suggesting that it was received by the Warden. (Doc. 129-3, p. 12-13.)

In the afternoon of January 4, Eric Jones (MVE's Floor Manager) sent an email to Steve Howell (MVE's Factory Manager). Jones's email advised Howell that "Timothy Umfleet came to me on 1-4-17" to obtain documentation regarding the safety precautions needed to work with the chemicals. (Doc. 129-3, p. 10.) Jones "made him some copies for Mr. Bowersox and he left. A short time after he left Mr. Bowersox called me and told me to send [Plaintiff] in immediately

---

[2] All page numbers are those generated by the Court's CM/ECF system and may not correspond to the document's original pagination.

[3] The claims addressed (and disposed of) by the Court's prior orders all relate to Plaintiff's allegations about the denial of safety equipment.

2

and that he no longer works for us . . . ." (*Id.*)[4] Umfleet, the Safety Manager, wrote a memo to Bowersox on January 4 documenting his conclusion that MVE "meets or exceeds the personal protective equipment requirements listed by the manufacturer." (Doc. 129-3, p. 16.)

On January 4, Dixie Curry (an MVE employee) told Plaintiff to gather his things and leave the MVE building; when he asked for an explanation, Curry directed him to Jones. (Doc. 129-2, pp. 7-8.) Plaintiff asked Jones for an explanation, and Jones stated that "Warden Bowersox just called and said you were fired because you filed [a grievance] about your health and safety in MVE." (Doc. 129-2, p. 8.)[5]

On January 20, Plaintiff filed a grievance complaining that Bowersox "arbitrarily" fired him as retaliation for Plaintiff's safety-related grievances. (Doc. 129-3, p. 23.) Three days later, the Missouri Department of Corrections solicited Bowersox's response. His handwritten response, dated January 25, 2017, states simply "Convicted felon is ignorant of facts." (Doc. 129-3, p. 24.) No other reason for the termination is provided.

On February 14, an employee (Tammy Weavers) sent Bowersox an email stating "I understand that you fired [Plaintiff] from MVE due to his complaints of chemical odors, safety equipment . . . etc. He's applying to other places now. Do you want him working anywhere else at this time?" (Doc. 129-2, p. 17.) Bowersox responded the same day and stated only that Plaintiff "can work anywhere . . . except MVE." (Doc. 129-2, p. 17.)

On March 22, 2017, Defendant wrote a letter to Bowersox regarding his "M.V.E. Job." (Doc. 129-3, p. 26.) His letter states that he had not obtained another job at SCCC and therefore

---

[4] In his Reply Suggestions, Bowersox contends that this email is hearsay. (Doc. 130, p. 5.) The Court disagrees. *See* FED. R. EVID. 801(d)(2)(A). And even if it is hearsay, the Court further believes that Jones's report about Bowersox's statement could be put in admissible form, and therefore may be considered at the summary judgment stage. *E.g.*, *Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 544 n.6 (8th Cir. 2018) (citing *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012)).

[5] Nothing in the Record places the events of January 4, 2017, in any particular order.

3

lost the ability to send money to his mother as he had been when he worked in MVE.  Plaintiff offered to withdraw all pending grievances and not file any in the future if he could have his job back.

The remaining claim in this case alleges that Bowersox violated Plaintiff's First Amendment rights by terminating his job with MVE in retaliation for Plaintiff's safety-related grievances.  Bowersox seeks summary judgment, contending that he is entitled to qualified immunity because the Record demonstrates that he did not retaliate against Plaintiff.  Plaintiff opposes Bowersox's motion.  The Court resolves the parties' arguments below.

## II.  DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).  In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985).  A party opposing a motion for summary judgment may not simply deny the allegations, but must

4

point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

"Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013).

Bowersox does not contend that the right Plaintiff asserts was not clearly established in January 2017; indeed, he concedes that "[i]t is well established that inmates have a right to be free from retaliation for using the prison grievance process." (Doc. 127-1, p. 4 (citing *Nelson v. Shuffman,* 603 F.3d 439, 449-50 (8th Cir. 2010); *see also* Doc. 127-1, pp. 7-8) (Bowersox's discussion of qualified immunity that only contends "Plaintiff has offered no facts showing that the Defendant violated any constitutional or statutory right.").) Bowersox instead focuses on the first prong of qualified immunity and argues that the Record establishes that he did not retaliate against Plaintiff. The Court does not agree that the Record is as conclusive as Bowersox contends.

Plaintiff's claim has three elements: he must establish (1) that he engaged in a constitutionally protected activity; (2) that Bowersox took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by Plaintiff's exercise of his constitutional rights. *E.g., Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014). Bowersox does not dispute that Plaintiff's use of the prison grievance system is protected activity, and the Court agrees. *E.g., Santiago v. Blair*, 707 F.3d 984, 991-92 (8th Cir. 2013); *Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009). Bowersox argues that Plaintiff cannot satisfy the second or third elements, so the Court will focus on those elements.

5

## A. Is this an Adverse Action that would Chill a Person of Ordinary Firmness?

The second element has two components: (1) an adverse action that is (2) sufficient to chill a person of ordinary firmness from engaging in or continuing the protected activity. Of these components, Bowersox purports to address only the first, and on that issue he argues that he did not subject Plaintiff to adverse action because he did not know about Plaintiff's grievance and he terminated Plaintiff because Plaintiff was engaging in improper and disruptive activity. (Doc. 127-1, pp. 4-6.) However, these arguments do not relate to the second element; they relate to the third element, which examines the reasons for the defendant's actions. Indeed, Bowersox refers back to these points when addressing the third element. (Doc. 127-1, pp. 6-7.)[6]

The second element focuses on whether the defendant took an adverse action, and whether that adverse action would chill a person of ordinary firmness. Bowersox does not address these issues; that is, he does not contend that terminating Plaintiff from his job at the MVE was not an adverse action or that this adverse action would not have chilled a person of ordinary firmness from pursuing or filing a grievance. In this way, Bowersox has not really addressed the second element, so Plaintiff could not have been expected to have addressed the matter and the Court need not address it at all.[7]

---

[6] Bowersox also contends that "Plaintiff is unable to specifically state the damages he has suffered or continues to suffer as a result of the alleged First Amendment claim." (Doc. 127-1, p. 4 (quotation omitted).) To the contrary, there is evidence that Plaintiff was denied the opportunity to earn money because he was fired; and Weavers's February 14 email to Bowersox suggests that Plaintiff did not have a new job at least by that date, and Plaintiff's subsequent letter suggests that he did not have a job by March 22. Regardless, "[b]ecause the retaliatory filing of a disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, the injury to this right inheres in the retaliatory conduct itself. An inmate need not show a separate, independent injury as an element of his case because when retaliatory conduct is involved, there is no independent injury requirement." *Haynes*, 588 F.3d at 1156

[7] Keeping in mind that Plaintiff was not required to address this element (because Bowersox did not do so in his motion), the Court notes there is at least some evidence justifying submission to a jury. The denial of work privileges – and the resulting lost opportunity to earn income – can constitute an adverse action. *See Spencer v. Jackson County, Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) ("Spencer's removal from the trustee program could potentially be found to be an adverse action resulting in his loss of access to income, work opportunities, and housing advantages as well as other privileges."). With respect to whether this adverse action would chill a person of ordinary firmness, the question

## B. Was Bowersox's Decision Motivated by Plaintiff's Grievance?

As stated above, Bowersox argues that his decision could not have been motivated by Plaintiff's grievance because he did not know about the grievance and because he acted based on a report of improper activity by Plaintiff. The Court concludes that there are disputed issues of material fact that preclude summary judgment on these grounds.

Bowersox's motion relies principally on his affidavit to support his argument that there are no factual disputes. There, he states that he did not know about Plaintiff's grievance on January 4, 2017, and that he did not sign it until January 25, 2017. (Doc. 127-3, ¶ 21.) He further declares that on an unknown date, an unnamed MVE employee advised him that Plaintiff "was walking about the factory floor . . . soliciting other inmates to conduct a work stoppage . . . a strike." (Doc. 127-3, ¶ 10.) Bowersox explains that he viewed this as a security risk and for that reason he terminated Plaintiff's employment at MVE. (Doc. 127-3, ¶¶ 13-20.)

However, there is no other documentation of such a conversation,[8] nor is there a statement from anyone that Plaintiff was soliciting a work stoppage (much less that they told Bowersox this fact), as would be expected.[9] More importantly, the jury could disbelieve Bowersox's statements based on the evidence discussed in Part I of this Order. A jury could find that on January 4, 2017,

---

is not whether Plaintiff himself was deterred. Such evidence is relevant, *e.g., Santiago*, 707 F.3d at 992 (citing *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)), and here there is evidence that Plaintiff was motivated by his termination to withdraw his grievance and promise not to file any in the future. Moreover, a person of ordinary firmness may be willing to forgo filing or pursuing a grievance if doing so results in the loss of a prison job (and the associated loss of income). This is ordinarily a question of fact for the jury, *e.g., Santiago,* 707 F.3d at 992; *Garcia*, 348 F.3d at 729, and the Court is disinclined to consider ruling on the issue as a matter of law given (1) Bowersox failed to raise the issue and (2) the potential consequences of being fired are such that a jury might reasonably find in Plaintiff's favor.

[8] Interestingly, despite offering only his affidavit to document Plaintiff's attempt to create a work stoppage, Bowersox asks the Court to reject Plaintiff's affidavit because "[s]elf-serving affidavits alone are not sufficient to create a genuine issue of material fact." (Doc. 130, p. 7.)

[9] For his part, Plaintiff declares that he never solicited inmates to participate in a work stoppage or strike, (Doc. 129-2, p. 9), and has presented a supporting affidavit from another inmate who worked in MVE. (Doc. 129-3, p. 6.)

7

Umfleet obtained documentation about the chemicals and the required safety devices for the specific purpose of providing the information to Bowersox. This finding would be supported by Jones's email to Howell as well as Umfleet's memo to Bowersox in which he communicated his findings regarding Plaintiff's grievance. In addition, Plaintiff's letter from December 2016 that was stamped "RECEIVED . . . SCCC WARDEN" also advised Bowersox about Plaintiff's grievance. Based on this evidence, a jury could conclude that Bowersox knew about Plaintiff's grievance when he terminated Plaintiff's employment.

The timing of these events would further allow a jury to find that there was a causal connection between the termination and Plaintiff's grievance. Jones's statement to Plaintiff that "Bowersox . . . said you were fired because you filed" a grievance would further support that finding.[10] In responding to Weavers's email, Bowersox did not deny the assertion that he fired Plaintiff for filing a grievance. Finally, when directed to respond to the accusation by the Missouri Department of Corrections, Bowersox did not state that he fired Plaintiff because he was organizing a work stoppage, which could lead a factfinder to disbelieve the explanation Bowersox gives now. Moreover, his response – that Plaintiff was "ignorant of the facts" – makes no sense if Bowersox's reason related to Plaintiff organizing a work stoppage. However, his response does make sense if one believes that Bowersox was implying that Plaintiff was "ignorant of the facts" about protective devices and the health risk associated with working in the MVE – which lends credence to the theory that there was a causal connection between the termination and the grievance.

---

[10] With his Reply Suggestions, Plaintiff supplies an affidavit from Jones in which he denies making this statement. (Doc. 130-3, ¶ 8.) Jones's affidavit only creates a factual dispute as to whether he made the statement, and the Court cannot resolve that factual dispute.

8

Case 6:17-cv-03415-BP   Document 132   Filed 07/06/20   Page 8 of 9

A jury could credit Bowersox's testimony that he did not know about Plaintiff's grievance on January 4, 2017, and that he terminated Plaintiff's employment because of safety concerns arising from a report that Plaintiff was trying to organize a work stoppage. A jury could also credit the evidence suggesting that information about Plaintiff's grievance was communicated to Bowersox on January 4 (so he knew about the grievance), and that Bowersox terminated Plaintiff's employment because Plaintiff filed that grievance. This factual dispute precludes the Court from ruling as a matter of law that Plaintiff's termination was not motivated by his filing of a grievance.

### III. CONCLUSION

For the foregoing reasons, Bowersox's Motion for Summary Judgment (Doc. 127) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: July 6, 2020